THE PRATA UNDERTAKING COMPANY *vs.* STATE BOARD OF EMBALMING AND FUNERAL DIRECTING.

JANUARY 9, 1936.

PRESENT: Flynn, C. J., Capotosto, Baker, and Condon, JJ.

456

BAKER, J. The record in this case shows that the Prata Undertaking Company, Inc., hereinafter referred to as the company, was notified to appear before the state board of registration in embalming and funeral directing to show cause why its license to conduct its business should not be revoked, because of alleged violations by it of certain sections of chapter 1886 of public laws 1932. Thereafter, specific charges were filed and the board held a hearing at which the company was represented by counsel, and witnesses testified under oath. Following the hearing, a written decision was filed in which, after making certain findings of fact, the board held that the company had violated the provisions of chapter 1886, public laws 1932, and revoked its funeral directing license. In the decision one Loper is named for the first time in the proceedings.

From this finding and order by the board, the company and Loper duly appealed to the superior court. When the appeal came on for hearing in that court, the appellants raised certain questions relating to the constitutionality of chapter 1886 of public laws 1932, and these questions are now before us for determination, having been certified by the superior court in accordance with general laws 1923, chapter 348, section 1.

The questions certified, together with a reference to the portions of the United States and State constitutions involved, are as follows: "(1) Is said Chapter 1886 of the Public Laws or any of the sections thereof unconstitutional and void, in that the provisions thereof are in conflict (for any of the reasons stated and claimed in the Reasons of Appeal), with the rights of the appellants or either of them under the following provisions contained in Section 2 of

Article I of the Constitution of the State of Rhode Island which reads as follows: 'Sec. 2. All free Governments are instituted for the protection, safety and happiness of the people. All laws, therefore, should be made for the good of the whole; . . .'

"(2) Is said Chapter 1886 of the Public Laws or any of the sections thereof unconstitutional and void, in that the provisions thereof are in conflict (for any of the reasons stated and claimed in the Reasons of Appeal), with the rights of the appellants or either of them under the following provisions contained in Section 1 of Article XIV of Amendment of the United States Constitution which reads as follows: 'Section 1. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . .'

"(3) Is said Chapter 1886 of the Public Laws or any of the sections thereof unconstitutional and void, in that the provisions thereof are in conflict (for any of the reasons stated and claimed in the Reasons of Appeal), with the rights of the appellants or either of them under the following provisions contained in Section 1 of Article XIV of Amendment of the United States Constitution which reads as follows: 'Section 1. . . . nor shall any state deprive any person of life, liberty, or property, without due process of law.'

"(4) Is said Chapter 1886 of the Public Laws or any of the sections thereof, unconstitutional and void, in that the provisions thereof are in conflict (for any of the reasons stated and claimed in the Reasons of Appeal), with the rights of the appellants or either of them under the provisions of Section 1 of Article XIV of Amendment to the United States Constitution which reads as follows: 'Section 1. . . . 'nor' (shall any state) 'deny to any person within its jurisdiction the equal protection of the laws.' "

It is clear that the object of public laws 1932, chapter 1886, which is in amendment of and in addition to general

laws 1923, chapter 170, is to provide that the undertaking business in its different phases may be operated lawfully only according to certain regulations and restrictions therein contained. Under present conditions of society and methods of living, it has become increasingly · necessary, in the interest of the general public, for legislative bodies to regulate and control within certain limits the conduct of various businesses, trades and professions. Examples of such regulation by legislative act may be found in branches of the medical profession, dentistry, public accounting, barbering, trained nursing, banking, and in many other lines of endeavor. The exercise by the legislature of the right to so regulate and control is now fully recognized and justified under the police power, especially when the professions and occupations are of a public or quasi-public nature. *Coppage* v. *Kansas*, 236 U. S. 1, and cases cited. The undertaking business is an enterprise of this type, and the safeguarding of the public in relation to its health, safety, morals, comfort and general welfare is the primary object sought by and is the basis for such legislation. *People* v. *Ringe*, 197 N. Y. 143; *Keller* v. *The State*, 122 Md. 677; *Miller* v. *Johnson*, 110 Kan. 135; *State* v. *Norvell*, 137 Tenn. 82. It is of importance to all that such a business be conducted properly, and only by those who are qualified to carry out its responsibilities. Questions relating to the care of dead human bodies, their embalming and transportation, the location of the business and its equipment, sanitation, danger of infection or contagion from disease, the obtaining of required certificates and permits before acting, the orderly conduct of funerals and burials, and the like, are all of public concern.

The appellants admit that the legislature has ample power and authority to pass acts regulating and controlling the operation of the business herein involved. They contend, however, that such legislation must be reasonable and not in violation of their constitutional rights, and they urge that certain parts of sec. 2 of chapter 1886, public laws

1932, hereinafter set out, are entirely arbitrary and unreasonable in their scope and effect, with the result that they are confiscatory in their nature, and if enforced will prevent the company from doing business. On the other hand, the State urges that the act in question is reasonable and not oppressive, considering all the interests concerned, and is a proper exercise of the police power by the legislature, and is constitutional in all its parts.

The particular parts of sec. 2 of chapter 1886, above referred to, read as follows: "Sec. 9. Every certificate issued hereunder shall specify the name of the person to whom it was issued, and shall be displayed conspicuously in his place of business or employment. Certificates issued under the provisions of this chapter shall not be assignable. The board shall have the power to revoke or suspend any certificate of registration, issued by it under this chapter, for gross incompetency, for unprofessional conduct, or for other cause deemed sufficient in the judgment of said board . . ."

"Sec. 13. No person who has promoted or is promoting, or has participated in or is participating in any scheme or plan in the nature of a burial association or a burial certificate plan wherein the rights of the public are not properly protected, or wherein there is any element of fraud, or wherein there is contained any agreement or provision that deprives heirs or next of kin from freedom of choice as to the type or style of funeral or the type or style or price of equipment used in connection with the funeral or the freedom of choice as to what funeral director shall be employed shall be entitled to any certificate under the provisions of this chapter, and the board shall revoke the certificate of any holder thereof who has engaged, directly or indirectly in the practices enumerated in this section; *provided, however*, that nothing herein contained shall be construed so as to prevent any such person from performing his obligations under any contract executed prior to the effective date of this act.

"Sec. 14. Every funeral director or embalmer, or the agents or representatives thereof, who pays, or causes to be paid, directly or indirectly, any sum of money or other valuable consideration for the securing of business, and every person who accepts any sum of money or other valuable consideration, directly or indirectly, from a funeral director or embalmer in order that the latter may obtain business, shall be guilty of a misdemeanor and upon conviction shall be punished as hereinafter provided, and the certificate of any embalmer or funeral director violating the provisions of this section or whose agents or servants violate the provisions thereof, shall be revoked by the board."

It is well settled that the court will make every reasonable intendment in favor of the constitutionality of a legislative act, and in so far as any presumption exists, it is in favor of so holding. Furthermore, the burden of proving the unconstitutionality of any statute is upon the party raising the question, and he must prove it beyond a reasonable doubt. *State* v. *Kofines*, 33 R. I. 211; *East Shore Land Co.* v. *Peckham*, 33 R. I. 541; *Sayles* v. *Foley*, 38 R. I. 484; *Manufacturers Mutual Fire Ins. Co.* v. *Clarke, C. T.*, 41 R. I. 277; *Fritz* v. *Presbrey*, 44 R. I. 207.

In determining whether a given act of the legislature, passed in the exercise of the police power to regulate the operation of a business, is or is not constitutional, one of the first questions to be considered by the court is whether the power as exercised has a sufficient foundation in reason in connection with the matter involved, or is an arbitrary, oppressive, and capricious use of that power, without substantial relation to the health, safety, morals, comfort and general welfare of the public.

In *Sundlun* v. *Zoning Board of Review*, 50 R. I. 108, the court, in holding that a regulation must be reasonable, quoted with approval from the case of *State of Washington* v. *Roberge*, 49 Sup. Ct. Rep. 50, 278 U. S. 116, as follows: "Legislatures may not under the guise of the police power, impose restrictions that are unnecessary and unreasonable

upon the use of private property or the pursuit of useful activities." It has also been held that: "The test of reasonableness required in a statute based on the police power, as to whether it is in violation of the constitution, is whether in its attempted regulation it makes efficient constitutional guaranties and conserves rights or is destructive of inherent rights." *People* v. *Weiner*, 271 Ill. 74. Whether a given exercise of authority transcends the proper limits must be determined in each case as it arises. *Coppage* v. *Kansas, supra.* In *City of Providence* v. *Stephens*, 47 R. I. 387, the court took occasion to say: "But private advantage or purely æsthetic considerations do not supply sufficient basis for the exercise of the police power." Other authorities stating these general principles are *O'Neil* v. *Providence Amusement Co.*, 42 R. I. 479; *State* v. *Dalton*, 22 R. I. 77; *Bonnett* v. *Vallier*, 136 Wis. 193; *People* v. *Ringe, supra.*

On the other hand it is commonly held that, within the limits defined, the legislature has a wide scope in exercising the police power. As long as the act in question bears a substantial relation to the welfare of the general public, protects and conserves constitutional guarantees, and appears to be a reasonable exercise of the power in relation to the purpose involved, it will be held valid. Within these limits the exercise of legislative discretion is not subject to judicial review. It is well settled that the court will not inquire into the motives of the legislature, nor pass upon general matters of legislative judgment. If a statute is found to be constitutional, then the court is not concerned with the question of whether or not it is wise from the point of view of legislative policy. *Child* v. *Bemus*, 17 R. I. 230; *La Plante* v. *State Board of Public Roads*, 47 R. I. 258; *Chicago, Burlington & Quincy R. R. Co.* v. *McGuire*, 219 U. S. 549; *Erie R. R. Co.* v. *Williams*, 233 U. S. 685; *Ex Parte McCardle*, 7 Wall. 506.

The appellants first contend that the statute now before us is unconstitutional in that it violates sec. 2 of article I

of the constitution of this State. This section has frequently been considered by the court, chiefly in connection with matters relating to taxes and assessments of various kinds because of the fact that the latter part of the section reads as follows: "and the burdens of the state ought to be fairly distributed among its citizens." Referring to this entire section, this court has made the following comment: "We will not stop to notice the very general language and declaratory form of this clause; setting forth principles of legislation rather than rules of constitutional law—addressed rather to the general assembly by way of advice and direction, than to the courts, by way of enforcing restraint upon the law-making power. . . . Indeed the language in question can hardly be said to impose any restriction upon the assembly at all, except what would be imposed by the fact of our free institutions, and the general principles of constitutional law, here and everywhere in this country prevalent. Had the constitution been wholly silent upon this subject, a greater latitude could not have been given by these principles, than seems to be studiedly implied in the form, spirit, and general terms of this sentence." *In the Matter of Dorrance Street*, 4 R. I. 230, at page 249. An examination of chapter 1886, public laws 1932, reveals that its general purpose is the regulation of the undertaking business in the interest of and for the protection of the public as a whole. No attempt is made in that chapter to bring about any unreasonable or arbitrary classification among undertakers, and the provisions of the act apply to all engaged in that occupation. Neither does there appear to be any discrimination between persons who are equal before the law. In our judgment no part of chapter 1886 of public laws 1932 is in violation of the provisions of sec. 2 of article I of the constitution of this State; and that chapter is therefore constitutional in so far as this section of the constitution is concerned.

In regard to sec. 9 of sec. 2 of the act before us, the appellants urge that the power given therein to the board

to revoke or suspend any certificate of registration "for other cause deemed sufficient in the judgment of said board" is too broad, unreasonable and arbitrary, and infringes on their constitutional rights.

This court, in *Glass* v. *State Board of Public Roads*, 44 R. I. 54, in passing upon the power of the board to revoke the license of an operator of a motor vehicle after a hearing—the statute involved being very similar to the one now before us in so far as procedural matters are concerned, said: "But the power to revoke a license after a hearing is more restricted. The words of the act 'for any cause the board may deem sufficient' must be construed in the light of the other parts of the act. The provision for notice and hearing restricts the power of the board to act only on the charges made." Thereafter, the statute involved in the above case was changed by the legislature so as to give the board of public roads authority to cancel, suspend, or revoke without a hearing "for any cause it may deem sufficient" the license of an operator of a motor vehicle. In construing this statute as changed, this court held that the power was valid and not obnoxious to section 1, article XIV of amendments to the federal constitution. *La Plante* v. *State Board of Public Roads, supra.* The powers under consideration in those two cases and in the instant case are couched in almost identical language. Further, in public laws 1932, chapter 1886, now before us, it is provided that from any ruling or finding of the board, suspending or revoking a certificate of registration, an appeal may be taken to the superior court, where the course of equity shall then be followed. The validity and effect of an appeal of this general nature has been fully considered and approved by the court in *State* v. *Armeno*, 29 R. I. 431, and in *Horton* v. *Old Colony Bill Posting Co.*, 36 R. I. 507. The establishing of such a right of appeal also serves to provide a method for the correction of any arbitrary or unreasonable exercise of power or abuse of discretion by the board. We find, therefore, that the powers created under sec. 9 of

chapter 170 of general laws 1923, as amended by chapter 1886 of public laws 1932, are reasonable, and that there is nothing in this section which is in violation of section 1, article XIV of the amendments of the constitution of the United States or of the appellants' rights thereunder, and that sec. 9 is constitutional.

The appellants also, in discussing sec. 9, argue that the limiting of membership on the board, which is to enforce and carry out the provisions of the act, to citizens and residents of this State who shall have been actually engaged for at least five years in the undertaking business in this State as embalmers and funeral directors on their own account, as is provided in section 1 of sec. 2 of said chapter, is unfair and discriminatory. In view of the fact that this business is of a peculiar and highly specialized nature, it seems to us reasonable and proper that the board be composed of undertakers. That the legislature saw fit to limit to some extent the number of undertakers who might be eligible for service on the board does not necessarily invalidate this part of the act. Obviously, the greater number of undertakers in the State could qualify for membership on the board, and the limitation is not so narrow that it would tend to place power in the hands of a few. In our opinion this matter of the personnel of the board falls within the general scope of legislative policy or discretion with which we are not concerned, and the provision in question is valid and unobjectionable.

Other issues are raised by the appellants under sec. 13 of sec. 2 of the act in question. This section designates the persons who are not entitled to a certificate of registration under chapter 1886 of public laws 1932. The first clauses of the section set out that among such persons are those who participate "in any scheme or plan in the nature of a burial association or a burial certificate plan wherein the rights of the public are not properly protected, or wherein there is any element of fraud."

The manifest object of the provision concerning fraud is to afford protection to the general public in relation to such plans or schemes. Fraud has frequently been passed upon and considered by courts and the term has a recognized meaning in the law. This proviso, therefore, appears to us to be clearly valid in that it is reasonable and relates to the general welfare of the public. Whether or not any particular scheme or plan of the above nature is fraudulent will have to be determined upon the facts in any given case.

A more serious question is raised by the use of the phrase "wherein the rights of the public are not properly protected." Unquestionably the legislature, in the exercise of the police power, may provide for the protection of the rights of the public in any burial association, scheme or plan, and may prohibit from engaging in the business of funeral directing anyone who has participated in such an association, scheme or plan wherein those public rights were not protected. However, the legislature must set up, in the act itself, certain definite reasonable standards by which the conduct of the person charged with participation in such a scheme or plan can be judged in relation to the proper protection of the rights of the public. The mere statement, as it appears in the act before us, does not do this. It is vague and indefinite. No standards whatever are set out in the act to serve as a guide or a help in limiting or defining the phrase or in making clear its meaning. The act does not point out what rights of the public are referred to, nor in what connection they are to be protected. It is not clear what would constitute proper protection considering the subject dealt with. The meaning to be placed upon the phrase is left to the personal judgment and opinion of those before whom it might come for construction, and on this issue individuals might differ widely in passing upon the same facts.

As the phrase in question is so vague and indefinite, we can give it no effect in this act and, therefore, we hold that in relation to the appellants' rights under section 1 of

article XIV of the amendments to the constitution of the United States it is invalid and unconstitutional.

The next clause of the section provides that a person is not entitled to a certificate if he participates in a like scheme or plan, "wherein there is contained any agreement or provision that deprives heirs or next of kin from freedom of choice as to the type or style of funeral or the type or style or price of equipment used in connection with the funeral or the freedom of choice as to what funeral director shall be employed . . ." It is not contended that a scheme or plan in the nature of a burial association or a burial certificate plan is in and of itself invalid or improper. The appellants, however, earnestly maintain that the above provision is unconstitutional, in that it violates the freedom of contract guaranteed under section 1, article XIV of the amendments to the federal constitution.

It has been held that the right of contract falls within the provisions of this section of the fourteenth amendment to the United States constitution, wherein it says, "nor shall any state deprive any person of life, liberty or property without due process of law . . ." In *O'Neil* v. *Providence Amusement Co.*, *supra*, this court quoted with approval the following language from *Allgeyer* v. *Louisiana*, 165 U. S. 578: "The liberty mentioned in that amendment means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary and essential to his carrying out to a successful conclusion the purposes above mentioned." See also *Coppage* v. *Kansas*, *supra; Miller* v. *Wilson*, 236 U. S. 373.

Such a right to make contracts is not an absolute right. Reasonable restraints imposed in the public interest through

the proper exercise of the police power by state legislatures are recognized by courts as valid. In *McLean* v. *Arkansas*, 211 U. S. 539, this matter is fully discussed by the court which said in part: "It is then the established doctrine of this court that the liberty of contract is not universal, and is subject to restrictions passed by the legislative branch of the Government in the exercise of its power to protect the safety, health and welfare of the people.

"It is also true that the police power of the State is not unlimited, and is subject to judicial review, and when exerted in an arbitrary or oppressive manner such laws may be annulled as violative of rights protected by the Constitution. While the courts can set aside legislative enactments upon this ground, the principles upon which such interference is warranted are as well settled as is the right of judicial interference itself." The court then holds that the act being reviewed must be unmistakably and palpably in excess of legislative power to warrant judicial interference.

The application of these general principles to the part of sec. 13 we are considering reveals the difficulties of the question before us. If one participating in any scheme or plan in the nature of a burial association or a burial certificate plan is to be entitled to a certificate of registration, without which he cannot lawfully conduct the undertaking business, it would appear that this part of the section precludes him from contracting with a person in regard to the details of the latter's own funeral. The practical effect of this part of sec. 13, likewise, would be to prevent an individual from so contracting with a funeral director or undertaker who was participating in any such plan or scheme. Where a burial association or burial certificate plan is involved a person's heirs or next of kin appear, by the portion of sec. 13 in dispute, to be given exclusive and entire control of all the details of the funeral.

A statute, or any part thereof, can not be given effect if, under the guise of the police power in the public interest, but actually to bring about some object outside of the proper

scope of that power, it arbitrarily or oppressively interferes with a person or property in relation to recognized guaranteed rights. No good reason has been called to our attention and none occurs to us, which makes it necessary in the interest of the general public that an individual, if he desires, should not be free to make a contract concerning the details of his own funeral with an undertaker who is conducting a burial association scheme or burial certificate plan, or that such undertaker should not be able in like manner to enter into a binding contract with a person concerning the latter's funeral, without placing himself in the class of those not entitled to a certificate, and therefore, not able to do business. The clause in question seems to go beyond the general purpose of the act in its relation to the public welfare. After careful consideration, and realizing fully the seriousness of our duty in passing upon the validity of an act of the legislature, we are of the opinion that the part of sec. 13 now under consideration constitutes an unreasonable and oppressive restriction upon the liberty of contract secured by section 1 of the fourteenth amendment to the United States constitution, and that this part of the act in question is clearly and palpably in excess of legislative power and, therefore, that it is in violation of the provisions of said fourteenth amendment and unconstitutional.

Section 13 also provides that: "No person who has promoted . . . or has participated in . . . any scheme or plan in the nature of a burial association or a burial certificate plan wherein," etc., "shall be entitled to any certificate under the provisions of this chapter, and the board shall revoke the certificate of any holder thereof who has engaged, directly or indirectly, in the practices enumerated in this section." The appellants do not seriously object to the part of the section which deals with those who are promoting or are participating in any such scheme or plan, but they do contend that the portion of the section above quoted is oppressive and unreasonable

because of its retrospective nature, and that it violates their guaranteed constitutional rights under the fourteenth amendment to the federal constitution.

As we have just determined that in sec. 13 the phrase in relation to the proper protection of the rights of the public, and the clause dealing with any agreement or provision in any burial association or burial certificate plan, which deprives the heirs or next of kin of a deceased person of freedom of choice in respect to certain matters, are unconstitutional and void and therefore of no effect, we must consider this section in relation to the question now before us as though the invalid portions were not contained therein. With this construction of the section in mind, the practices enumerated in which the previous participation directly or indirectly would cause a revocation of an existing certificate or the refusal to grant a new one would be limited to the single proviso, that the burial scheme or plan should have contained no element of fraud.

In the constitution of this State there is no provision which expressly prohibits the passage by the legislature of retrospective statutes, except that forbidding the enactment of *ex post facto* laws which, it has been held, relates only to matters of a criminal nature. *Cummings* v. *Church*, 50 R. I. 71. It appears that the legislature has the authority to pass an act which may reach back and change or modify the effect of a prior transaction, provided no fundamental objection exists apart from the retrospective aspect. Cooley on Const. Lim., Vol. 2, (8th ed.) 272. The instant case does not present any fundamental objections of this character. Legislation, however, having a retrospective aspect must be carefully scrutinized, if its constitutionality is questioned, because of abuses which may result therefrom.

In the section of the statute we are considering, the element mentioned, viz., the absence of fraud, upon which the granting or retaining of a certificate is based, certainly bears a proper relationship to the general welfare. We can not say that it is clearly unreasonable and arbitrary for the

legislature to provide by statute, if it so sees fit, that one, who in the past committed a fraud in connection with a burial association or burial certificate scheme or plan, should not be entitled to a certificate of registration now or should not have it revoked if outstanding. As, in our view, the part of the section in question is limited to this matter of fraud only, and no property right of the appellants is directly affected in connection with their certificate of registration, we find that this portion of sec. 13 is not such an oppressive and arbitrary exercise of the police power that it is contrary to the appellants' rights under sec. 1 of the fourteenth amendment to the federal constitution. The wisdom of this part of the act is a matter for legislative policy. We hold, therefore, that the clause of sec. 13 we are now considering is constitutional and valid.

As this section is easily divisible in its meaning and application, the holding of particular portions unconstitutional does not affect the constitutionality of the remainder of the section. Further, this situation is specifically covered by the provisions of sec. 18 of sec. 2 of the chapter herein involved.

Section 14 of sec. 2 of the statute before us is penal in making it a misdemeanor, punishable by fine or imprisonment, or both, for any funeral director or embalmer, or their agents, to pay or cause to be paid directly or indirectly any money or other valuable consideration for the securing of business. Anyone accepting any such money or other valuable consideration directly or indirectly from a funeral director or embalmer is also guilty of the misdemeanor, and the certificate of any embalmer or funeral director who himself or whose agents violate the provisions of this section shall be revoked by the board. The appellants contend that this section is unreasonable in its scope, and imposes restrictions upon the conduct of their business which violate their constitutional rights preserved in section 1 of article XIV of the amendments to the constitution of the United States.

The business we have under consideration, from its very nature, leads to a confidential and intimate relationship between the funeral director and those dealing with him, usually at a time when emotions are strong. Unnecessary commercialization of a death, therefore, should be avoided. The fact that funeral directors and embalmers are in a position to materially assist in the concealment of crime, if they should be so disposed, may be noted. Having in mind that the primary purpose of the act in question is the preservation of the morals, comfort and general welfare of the public, it may well be that the legislature believed that business of the type before us should not be secured by the payment of money or other valuable consideration. The determination of this issue, in our judgment, properly falls within the domain of legislative discretion or policy. Undoubtedly under the constitution an individual has a wide latitude as to the methods he may lawfully employ in couducting his business, yet when the public interest becomes involved, it is well settled that reasonable and necessary restrictions may be imposed, and they are not deemed to be an infringement upon his constitutional rights in that connection. A somewhat analogous situation was presented in the case of *McCloskey* v. *Tobin*, 252 U. S. 107, in which the court held constitutional, under sec. 1 of article XIV of the amendments to the federal constitution, a state statute which prohibited the soliciting by a layman of claims in order to prosecute, defend, present or collect the same. The court there said that the regulation was obviously reasonable, as it aimed to bring the conduct of the business into harmony with ethical practice of the legal profession, to which it was related. The provisions of sec. 14 do not prevent the doing of business, but merely regulate the method. Considering the subject-matter with which the legislature was dealing, we can not say that these provisions are unreasonable, and therefore we are of the opinion that sec. 14 is constitutional and does not infringe upon the appellants' rights as secured to them under

section 1 of article XIV of the amendments to the United States constitution.

In answer to the questions submitted for our determination, we find that the portions of sec. 13 of sec. 2 of chapter 1886, public laws 1932, passed in amendment of and in addition to chapter 170, G. L. 1923, reading as follows: "wherein the rights of the public are not properly protected," and "wherein there is contained any agreement or provision that deprives heirs or next of kin from freedom of choice as to the type or style of funeral or the type or style or price of equipment used in connection with the funeral or the freedom of choice as to what funeral director shall be employed," are invalid and unconstitutional as being contrary to section 1 of article XIV of the amendments to the United States constitution.

The other portions of chapter 1886, public laws 1932, we find to conform to the requirements of sec. 2 of article I of the constitution of this State, and to the requirements of section 1 of article XIV of the amendments to the constitution of the United States, and therefore to be constitutional and valid.

The papers in the case, with our decision certified thereon, are sent back to the superior court for further proceedings.

*Wayne H. Whitman, Adrien W. Hebert,* for appellants.

*John P. Hartigan, Attorney General, Michael De Ciantis, Asst. Attorney General,* for appellee.