## STATE v. GUARDIAN FOUNDATION OF TEXAS, Inc.

### No. 8560.

Court of Civil Appeals of Texas. Austin.

Jan. 12, 1938.

Wm. McCraw, Atty. Gen., and Sam Lane, Asst. Atty. Gen., for appellant.

Claude C. Westerfeld and Paul D. Lindsey, both of Dallas, and Henry H. Brooks, of Austin, for appellee.

McCLENDON, Chief Justice.

Appeal from an interlocutory vacation order denying (pending trial on the merits) (1) appointment of a receiver; (2) temporary injunction; in a quo warranto proceeding instituted by the state to forfeit the charter of appellee, a Texas corporation.

The order appealed from was passed by Hon. Hardy Hollers, who had been elected by the bar as special judge of the Ninety-eighth judicial court under the provisions of articles 1887—1892, R.C.S. (the regular judge of the Ninety-eighth judicial district, Hon. J. D. Moore, being ill and unable to hold the term of court). The suit was pending in the One hundred twenty-sixth judicial district court, which was then in vacation.

Appellee urged below and urges here the trial judge's disqualification to pass the order, on the ground that his jurisdiction extended only to the business of conducting the term of the Ninety-eighth judicial district court, of which he was elected special judge. We are strongly inclined to the view that this point is well taken. See Wynn v. R. E. Edmonson Land Co., Tex. Civ.App., 150 S.W. 310, error refused; League v. Brazoria County, Tex.Civ.App., 187 S.W. 1012; 25 Tex.Jur. p. 325, par. 76; and note 2, p. 327.

Appellant urges that the powers granted to the district judges of Travis county under article 199, R.C.S., as amended, Vernon's Ann.Civ.St. art. 199, authorize the special judge to enter the order at issue. It is doubtful whether these provisions

were intended to apply to a special judge elected under the above statutes to hold a term of court for one of said judges. However, we find it unnecessary to decide that question, in view of our holding that the order was properly entered.

Appellant concedes there was not sufficient showing to authorize the appointment of a receiver and has not briefed that point. In this we concur, and therefore this subject will not be further noted.

Appellant's action to forfeit the charter is predicated upon two grounds: (1) That the business appellee conducted was ultra vires; and (2) that certificates issued by it were in violation of article 580a, Vernon's Ann. Penal Code.

■ The trial judge filed conclusions of law and fact at the request of appellant. In these he declined to decide whether the business conducted by appellee was ultra vires and to enjoin its transaction, upon the ground that such injunction would have the effect of deciding the entire case and destroying rather than preserving the status quo; and, further, that the provision of the quo warranto statutes under which either party had authority to demand a trial on five days' notice, article 6255, afforded adequate legal remedy to the state, and no irreparable injury would result before the state could obtain a trial on the merits.

Appellee was chartered "to do a general advertising business." It published a magazine known as "The Guardian Shield," for which it charged a lump sum subscription fee of $35, if paid in cash, or $36 on credit. Appellee owned certain copyrighted material designed to benefit advertising of funeral homes and increase their business and had agreed to give designated funeral homes the benefit of this material. In addition to the magazine, the subscriber was issued what was designated a "service contract." The business of the corporation under this service contract is fairly stated in appellee's brief in the following hypothetical case. We have substituted the name "John Doe" for that of a local undertaker used by appellee:

"Mr. John Doe is operating a funeral home and undertaking business. This business is operated as the Doe Funeral Home and is unincorporated. Mr. Doe desires to increase the volume of his undertaking business, and to that end he organizes a corporation chartered to do an advertising business, which we will call Doe, Inc., and of which he becomes president and principal stockholder. Doe, Inc., and Doe Funeral Home (unincorporated) enter into a contract whereby the funeral home agrees to furnish its merchandise and services at cost plus ten per cent to all persons subscribing for literature, information and service rendered by the corporation. The funeral home also agrees to conduct its business in accordance with the plan advertised by the corporation, and in order to insure that it does in fact operate according to the advertised plan, the corporation is given the right to inspect and audit its business, thus safeguarding the truth of the advertising. The corporation then solicits the general public and sells what we shall designate as certificates for lack of a better word. By the certificates, the corporation undertakes:

"(a) To furnish the purchaser literature and information concerning cost of funeral merchandise and funeral service, thus informing the subscriber of the wares and services offered for sale by the funeral home.

"(b) To render the information thus furnished of practical value to the purchaser by agreeing to act as his agent in negotiating contracts for such funeral merchandise and services as the subscriber may desire to purchase.

"(c) The information which the corporation furnishes is not limited to the printed literature, but includes such additional information as the subscriber may request, and having obtained the information desired, the corporation will deal with the funeral home of the subscribers choice, as his agent, regardless of whether the Doe Funeral Home is chosen or not.

"(d) In order to insure the protection of the subscribers, or certificate holders, the corporation agrees to cooperate with them in forming an organization, and in selecting a cost committee which has a right to audit the books and inspect the business of Doe Funeral Home.

"Constituting a part of the certificate, is a written agreement signed by the Funeral Home (not the corporation) whereby it undertakes to furnish such funeral merchandise and services as the holder may order at cost plus ten per cent, and to permit supervision and inspection by the cost committee selected by the certificate holders. The certificate contains an unequivocal statement that the corporation shall not be responsible for the breach of Doe Funeral

Home's contract, or any other contract negotiated by it.

"The Funeral Home thus benefits by the publicity given its merchandise and plan of operation in the literature and certificates distributed and sold by the corporation, its business is augmented to the extent of each funeral ordered by certificate holders, and on each such transaction it realizes a ten per cent profit.

"The Corporation profits to the extent of the purchase price of the certificates sold.

"The Certificate holders, or subscribers, obtain the benefit of the information and service furnished by the corporation, and in addition are enabled to purchase such funeral merchandise and services as they may need at cost plus ten per cent, from a funeral home which is subject to auditing and inspection by a cost committee of their own choice."

The contentions of the state are that the business thus conducted was not that of advertising, but that in effect it amounted to the conduct (1) of an undertaking business; and (2) of an insurance business.

It is manifest that the issues thus raised present questions both of law and fact upon which there might be a sharp conflict of view. Modern advertising is conducted under a wide variety of methods, and its limitations are not readily nor precisely definable. A determination of this issue in advance of final adjudication upon plenary hearing would therefore rest upon doubtful grounds. The granting of a temporary injunction is largely a matter of discretion of the trial court. It is only in those cases where there is abuse of such discretion that appellate courts should overturn the trial court's order. The effect of a temporary injunction in this case would put an end to the business of appellee until a final adjudication of the case. Unless, therefore, there were an unequivocal and indisputable legal right to the injunction, or the clear violation of a statute, the trial court's denial of such injunction should not be disturbed. This is especially true in a case of this character brought by the state, where no bond is required and no liability incurred in case the injunction should prove to be improperly sued out.

We are further of the view that the trial judge correctly held that the state had an adequate remedy at law, and that no irreparable injury would be done, in that a speedy trial in the trial court is provided

for; and on appeal the court is required to "give preference to such case, and hear and determine the same as early as practicable." Article 6256.

Upon the question whether the "service contract" violates article 580a of the Vernon's Ann.Penal Code, appellee strongly urges that this statute, if it covers the case at bar, is invalid as contravening the due process clauses of the State and Federal Constitutions. In addition to a number of cases upon the general principle involved, a case by the Rhode Island Supreme Court closely analogous to that at bar and striking down a similar statute is cited. Prata Undertaking Co. v. State Board, 55 R.I. 454, 182 A. 808, 104 A.L.R. 389.

Without expressing any opinion upon the question thus presented or upon the other legal questions urged by the state, we are of opinion that the trial court did not abuse its discretion in refusing to determine these questions in advance of a trial on the merits, and in denying temporary injunction.

The order appealed from is affirmed.

Affirmed.