R. P. PHILLIPS V. THE STATE.

No. 20014.   Delivered February 8, 1939.
Rehearing Denied March 8, 1939.

The opinion states the case.

*W. A. Hawkins,* of Fort Worth, for appellant.

*Dan Moody,* of Austin, amicus curiae.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The offense is for violation of the statute with reference to burial material and services. The punishment assessed is a fine of $25.00.

Appellant urges two legal propositions against his conviction. The first is that the law is in contravention of the Constitution and contrary to public policy. The second is that the indictment is insufficient to charge an offense. We will first consider the sufficiency of the indictment.

Art. 580a. P. C., under which this prosecution was instituted, reads in part as follows: "Section 1. It shall hereafter be unlawful for any person, corporation, insurance company, fraternal organization, burial association or other association to write, sell or issue any certificate, policy, contract or membership, maturing upon the death of the person holding the same or upon the death of some member of the holder's family, if such certificate, policy, contract or membership provides that it is to be paid or settled, or if the plan of such person, corporation, organization or association provides that its certificates, policies, contracts or memberships are to be paid or settled, in merchandise or services rendered or agreed to be rendered, or by furnishing burial materials or burial services, or in discounts on the regular prices of merchandise, burial materials or funeral services or other services; or if such certificate, policy, contract or membership is to be paid at maturity in anything except money."

The indictment in the case reads as follows, omitting the formal part:

"* * * That one R. P. Phillips hereinafter styled defendant, in the County of Tarrant and State aforesaid, on the 15th day of February, in the year of our Lord One Thousand Nine Hundred Thirty-Eight did then and there unlawfully write, sell and issue a certificate, policy, contract and membership to G. F. Howard, said certificate, policy, contract and membership being of the tenor as follows, to-wit:

"No. 1760

"Service Contract
"PHILLIPS' FUNERAL HOME
"1422 Pennsylvania Avenue
Fort Worth, Texas.

"This contract Certifies That Mr. C. F. Howard Address 916 Grace St City Ft. Worth, Texas is hereby granted a Service Contract and has paid, or agrees to pay, $10.00 for same, which entitles said person and his or her entire family and/or de-

pendents to complete funeral at COST PLUS APPROXI-MATELY TEN PER CENT.

"The Phillips Funeral Home agrees that upon the occurrence of the first funeral under this contract, it will allow a deduction of the amount paid for service contract, from the cost of the funeral; and will thereafter continue to conduct funerals for all members included under this contract at Cost Plus Approximately Ten Per Cent.

"Upon full payment of Service Contract the Funeral Home agrees to issue to the herein named contract holder and his or her immediate family Courtesy Cards entitling them to Free Ambulance Service within the city limits of Fort Worth.

"In witness thereof the Phillips Funeral Home has caused this contract to be executed by its' President and attested by it's Secretary and the seal of the Funeral Home affixed hereto on this the 15 day of Feb., 1938.

Phillips' Funeral Home

                E. M. Phillips   ---------------------------
                Secretary              President

SEAL

Fort Worth, Texas.

said certificate, policy, contract and membership meaning and providing by the words, phrases and terms thereof, as hereinabove set out, that the said Phillips Funeral Home and the said Defendant agreed and agrees that upon the occurrence of the death of the said G. F. Howard, he, the said G. F. Howard being one and the same person set out in the contract above as "C. F. Howard" the initial "C" having been written into said contract by mistake for the initial "G" and the said G. F. Howard being the holder of the said contract, or any member of his family and/or dependents, they and each of them shall be entitled to a complete funeral burial material and burial service at cost plus ten percent on regular prices contrary to the form of the Statutes in such cases made and provided * * * *."

It appears to us that under the article above quoted, the person or corporation may comply with terms of the contract and discharge the obligation thereunder by furnishing burial materials, funeral services, etc., provided it is furnished at the regular price without a discount, or he can pay it in money. If we are correct in this construction of the statute, then it seems to us that it would be necessary to allege that he did not agree to discharge his obligation in money, but in materials or services, or both, at a discount of the regular price. In this case, it is alleged that appellant agreed to discharge his obligation under the contract by furnishing material and services

at cost plus 10 per cent on the regular price. This, it seems to us, does not charge an offense under the statute because it fails to charge that he agreed to sell at a discount.

If it were not the intent of the Legislature that the person corporation, etc., should have the option of discharging the obligation under the contract in materials, services, or both, then there would have been no need of inserting the words "or in discounts on the regular prices of merchandise, burial materials or funeral services or other services." This language, if not expressly then by implication, means that such contract can be discharged by furnishing funeral material at the regular price of such merchandise.

The next question presented is what is meant by the words "regular price?" Does it mean regular cost price or regular selling price? If regular selling price, who is to set the price—appellant or some other party? Does it mean the regular selling price at the time the contract is made, at the time of the death or at the time the material is furnished? Prices sometimes fluctuate rapidly.

It seems to us that this feature of the statute is so indefinitely framed that it cannot be understood, either from the language in which it is expressed or from some other written law. Hence it is inoperative. See Art. 6, P. C.

If we eliminate such words as appear to be unnecessary in the statute, insofar as it applies to the present case, it reads as follows:

"It shall hereafter be unlawful for a person to contract with another if the contract matures on the death of the beneficiary or a member of his family, and if the contract is to be paid in furnishing burial materials, or burial services, or if the contract obligates the maker to furnish burial materials or burial services at a discount on the regular prices for such material or services, or if such contract is to be paid at maturity in anything except money."

If effect be given to the last sentence in the law it means that no person can in advance contract for the burial of himself or members of his family because necessarily the contract must be discharged by furnishing burial materials and burial services and *not in money*, and yet the law undertakes to say that it is unlawful to make any such contract which is not payable in *money*. The law also says it shall be unlawful if a party contracts to furnish burial materials and services at all, then follows with the qualification that it shall be unlawful if the contract obligates the maker to furnish such materials

and services at a discount of regular prices, and then cleans up by the general statement that it is unlawful if the contract may be discharged in anything except money.

If unqualified effect be given to the last clause of the statute it means that an undertaker or funeral home operator cannot enter into a contract of the kind in question unless he agrees to pay for the cost of the funeral material, services, etc., in money. It would seem an anomaly to have the funeral home operator to pay to the surviving members of the deceased's family the money and then let them in turn use the same money to purchase from him the desired materials and services. In other words, A, an undertaker, makes a contract to pay in money to B the required amount to purchase funeral materials, services, etc. B's survivors collect the money and in turn buy from the undertaker the necessary funeral material and services. What is there in this law that would prevent the funeral home operator from including in the contract a provision that in consideration of immediate and prompt payment to B's survivor or heirs, they were to buy the material and services from him? He could then place any kind of a price on his goods that he desired.

We are thoroughly in accord with the state's contention that the Legislature has the power to classify contracts for the purpose of prohibiting the making of some, or imposing reasonable regulations upon others, but this power springs from the underlying object of prohibiting pernicious evils which might otherwise result to the public generally.

We may concede that the state, under it's police power, has the right to prohibit or regulate any act or contract which is inimical to the health, good morals or the public welfare, but there is a limit to the valid exercise of its power. Otherwise the Fourteenth Amendment to the Federal Constitution would have no effect and the Legislatures of the various states would have unlimited power to be exercised at will, free from constitutional restraint.

Freedom of liberty of contract is guaranteed by the Constitutions of both the state and Federal Government. The Legislature has no right to prohibit and limit a man in his lawful right to contract, unless such contract or contracts are fraught with fraud, deception and the like, which if unbridled and unchecked might lead to much mischief. But the contract in the instant case speaks for itself; it bears no inherent vice upon its face; nor can we find any concealed therein, and to outlaw it would be an invasion and infringement upon a person's constitutional right of liberty of contract.

The state, in its brief, argues vigorously that the Legislature has the power to regulate all insurance business, including contracts. This may be conceded, but it is our opinion that the contract here under consideration contains none of the elements of an insurance contract and does not come within the meaning of the term "insurance" so as to bring it within the purview of that branch of the law. It does not undertake to insure or indemnify against either death, accident or sickness. The benefits to be derived from a contract of this nature are not for loss on a risk named in a policy of insurance. Bouvier's Law Dictionary, under the heading of "Insurance" defines an insurance contract to be one whereby, for an agreed premium, one party undertakes to compensate the other for loss on a specified subject. In the instant case, no assessment or levy and no dues or premiums either monthly or annually are collected.

In the case of Sisson v. Prata Undertaking Co., 141 Atl. 76, the contract came within the definition of the term "insurance," in that it provided for the payment of a small amount of money monthly. In all of the cases that have been brought to our attention which have been condemned by the courts, the Funeral Home Operators have brought themselves within the term "Insurance," in that they issued policies or certificates and provided either for the payment of assessments or dues payable either monthly or annually, and in case the same were not paid within the time provided for in such policy, contract or certificate, they lost all rights thereunder and forfeited all payments theretofore made. But in this case, there are no assessments, no dues nor premiums to be payed by the promisee. The heirs and kin may select the coffin, shroud and services desired and then pay for the same at cost plus 10 per cent. Where is the vice, the pernicious evil in this contract which would authorize the enactment of a law to prohibit the making of the same? There seems to be none. Jordan v. State, 51 Tex. Crim. Rep., 531; (103 S. W., 633) ; Montana v. Gateway Mortuaries, 287 Pac., 156..

It is also argued that the possibility of fraud inheres in such contracts as the one under consideration; namely, solvency of the promisor, predeceasing of the promisee by the promisor, false pricing of merchandise, the abandoning of business, the refusal to perform, etc. These are hazards that are inherent in almost every kind of contract. To outlaw a contract because the promisor may predecease the promisee, or because he may become insolvent, abandon business or refuse to perform the

contract, or because it matures upon death would be stepping over into the domain prohibited by the Constitution.

The further contention is made that a contract of this nature is fraught with fraud in that no price for the material is fixed; hence the promisor may, in the hour of bereavement, when sorrow and grief weigh heavily upon the mind of the survivors, furnish materials of an inferior nature, etc., since the survivors will not quibble or remonstrate under such circumstances. Under this contract, the survivors are at liberty to select the kind and character of material, and the services they desire and pay cost plus ten per cent. That he may offer or furnish inferior material and the survivor or the heirs may not quibble or remonstrate under such circumstances, would be equally true of any unconscionable undertaker not engaged in making such contracts. Under this contract, the beneficiary or his survivor may ascertain the cost of the funeral material and pay cost plus ten per cent or he may ascertain the cost price later and if he has been overcharged, then they can recover the difference.

The law may have been designed to regulate insurance contracts, but when it is sought to prohibit the making of contracts of the kind under consideration, it is void and ineffective as it necessarily invades rights guaranteed to every person by the constitution.

For the errors hereinabove pointed out, the judgment is reversed and the prosecution ordered dismissed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—The State has filed a motion for rehearing which is supported by lengthy written argument. We have examined both with much interest as we have also the answer to the State's motion.

We gave our best attention to the questions discussed in our original opinion before same was released and feel that nothing will be gained by further consideration of the subject.

We can not refrain, however, from adverting to a statement found in the State's argument, which is as follows:

"This statute is not subject to the construction that must be

given it to hold that it prohibits any man from contracting in advance for burial of himself or members of his family."

It appears to us that representatives of the State thus admit themselves out of court so far as the present case is concerned. Attorneys for the State who initiated this prosecution necessarily gave to the statute the construction which it is now urged can not be given it because the contract upon which the prosecution is based speaks for itself.

Believing proper disposition of the case made originally the motion for rehearing is overruled.