

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

February 13, 1959

Mr. Allen Melton
Executive Secretary
State Board of Morticians
Rio Grande National Bldg.
Dallas, Texas

Dear Mr. Melton:

Opinion No. WW - 551

Re: The authority of the State
Board of Morticians to
promulgate rules governing
solicitation, and related
questions.

     You have submitted to this office various questions concerning the authority of the State Board of Morticians to promulgate rules governing solicitation.

     Regulation of funeral directors and embalmers, provisions for the State Board of Morticians, and authority for promulgating rules and regulations governing the said activities are provided for in Article 4582b, Vernon's Civil Statutes.

     Section 2 of said Article provides:

     "The State Board of Morticians shall have the power and it shall be its duty:

     "(1) To adopt and promulgate such rules and regulations for the transaction of its business and for the betterment and promotion of the standards of education, service and practice to be followed in the profession of funeral directing and of embalming in the State of Texas within its discretion, such being consistent with the laws of this State or for the public good. <u>No rule or regulation promulgated by the Board may be adopted, amended or rejected without due notice and hearing thereon.</u>" (Emphasis ours).

     Acting under the authority conferred by the above Article, the State Board of Morticians, on January 16, 1958, proposed the following amendment to Rule 3, Section 6-B (3) of the Rules and Regulations of the State Board of Morticians of Texas:

     "(c) Solicitation.
     "No licensee, apprentice, or any other person, whether employee, agent or representative, or one in any manner associated with a funeral establishment, shall solicit business or offer any inducement, pecuniary or otherwise, for the

purpose of securing or attempting to secure business for
such funeral establishment; such persons shall not issue any
gift certificate, or discount certificate, or offer, or
give, any discount for the purpose of obtaining funeral
business; and such persons shall not use donations, gifts,
bonuses or acts of service designed, or calculated to
place the recipient, or his or her family, or relatives,
in a position of obligation or indebtedness to the donor,
or the funeral establishment to which such persons are
related, and such persons shall not transfer, or offer to
transfer, any property or service as payment or as token
consideration, for business secured or influenced, or
otherwise provided such funeral establishment, or in pro-
mise thereof."

A public hearing on such proposed amendment was called for
February 11, 1958, and notice given to the funeral directors and embalmers
of Texas by mail under date of January 25, 1958. A hearing was held as
scheduled, well attended, and certain clarification was requested. On
that day, without changing any of the wording in the Subsection proposed
January 16, 1958, the Board added a definitive paragraph to that Sub-
section as follows:

"Included in the above paragraph and prohibited
are free ambulance service, free hospital beds, free
wheelchairs, free oxygen and/or oxygen equipment, or
charges made therefor at discount, but not to the
exclusion of any other acts, services or specific items
of value which otherwise are included therein, by the
provision thereof."

The rule as changed was to be effective as of February 11,
1958, and would have been in effect with the change, at that time, had
the definitive paragraph not been added thereto on that date, but notice
of the additional portion was not given to the funeral directors and
embalmers of Texas until February 11, 1958.

The obvious intent of the rule is to control solicitation
conduct on the part of licensees in the State of Texas.

After January 25, 1958, and both before and after February
11, 1958, various funeral establishments issued through the mail various
certificates to numerous boxholders. These certificates were of four
classifications:

Type 1 authorized the holder of the certificate, ambulance
service within the city limits of a Texas city at a sliding scale and the
certificate further provided to furnish the holder of the certificate and
his immediate family and dependents funerals at "cost plus approximately
ten per cent".

Type 2 authorized a 10% discount to holders of the certificate and an additional 10% discount upon the full payment of the cost of such funeral, in cash, at the time of the funeral of such person.

Type 3 authorized a 20% discount on any funeral service selected, and a 25% discount on ambulance and invalid coach service.

Type 4 entitles the named individual to a complete funeral "at cost plus approximately ten per cent". It also provided a discount on casket. However, before the holder is entitled to any of these services he must agree to pay to the funeral home the sum of $10.00.

Another practice used by funeral homes is the issuance of an insurance policy. Insurance policies are sold through the organization and people who purchase an insurance policy become members of the funeral home's Family Security Plan. As a member of the Family Security Plan, the member is entitled to certain discounts and privileges in connection with the funeral expenses.

You have submitted to us three questions which are in substance as follows:

1. Is the Board acting within the limits of its authority to revoke or suspend a license if it finds that the funeral directors in charge and/or the owner of one funeral home, which issued certificates referred to as certificates 1, 2, 3, are in violation of the new rule governing solicitation by issuing and giving a discount for the purpose of obtaining funeral business, or is the Board limited in the enforcement of the new rule governing solicitation to acts which occur from and after the date of February 13, 1958, at which time all licensees in Texas were notified of the final action of the Board in promulgating the new rule governing solicitation?

2. Is the State Board of Morticians in any way restricted in the application of the new rule promulgated by it governing solicitation to the funeral establishment which is identified as certificate 4 in the event that funeral establishments give a discount under the service contract?

"3. Is solicitation through newspaper advertising, radio or television, wherein a discount is offered for business, a violation of the rule passed by the State Board of Morticians on February 11, 1958?"

4. Is the State Board of Morticians in any way restricted in the application of the new rule promulgated by it governing solicitation to the funeral establishment which carries the insurance policy plan?

The Legislature may delegate the regulation of funeral directing and embalming to an administrative agency, and authorize it to provide rules and regulations governing such profession. Prata Undertaking Co. vs. State Board, 182 A. 808; Gulf C. & S. F. Ry. Co. vs. State, 120 S. W. 1028, (error ref.); Harris vs. Municipal Gas Company, 59 S. W. 2d 355 (error dis'm.); 42 Am.Jur. 301 § 12; 9 Tex.Jur. 497, 1 Tex. Jur. 10 Yr. Supp. 101, Administrative Law & Procedure. Where the statute expressly authorizes the agency to regulate an industry, it implies authority to adopt regulations to that end. Railroad Commission vs. Shell Oil Co., 139 Tex. 66, 161 S. W. 2d 1022. And the agency may make all reasonable rules and regulations proper and necessary in the exercise of its powers. Texas Liquor Control Board vs. Super Savings Stamp Co., 303 S.W. 2d 536 (error ref., n.r.e.); 4 A.L.R. 2d 667.

The state may establish boards of undertaking and embalming for the purpose of making rules for the control and regulation of the business, and the acts of such boards will be sustained unless there is an unlawful delegation of legislative power or the boards act in an arbitrary, capricious or unreasonable manner. Gholson vs. Engle, 138 N.E. 2d 508; Louisiana Undertakers vs. La. State Board of Embalming, 58 So. 2d 303; Trinka Services vs. State Board of Mortuary Science, 122 A. 2d 669; Quesenberry, et al vs. Estep, supra; 104 A.L.R. 402.

The power to regulate includes the authority to prohibit advertising of a character tending to influence the more gullible or susceptible person or to proclaim the superiority of the advertising practitioner. Sherman v. State Board of Dental Examiners, 116 S.W.2d 843. Those engaged in such professions are subject to legislative regulation, and the vocation itself being subject to regulation, so are all its incidents. Kee v. Baber, 303 S.W.2d 376 (Tex. Sup. Ct.).

From the foregoing authorities, there can be little question of authority of the State Board of Morticians, acting under Article 4582b, to adopt, promulgate and enforce rules and regulations governing solicitation of business.

Article 4582b, Vernon's Civil Statutes, governs the activities of the Board, and it is clearly provided in that Statute that no rule or regulation promulgated by the Board may be adopted, amended or rejected without due notice and hearing thereon. In Greer v. Railroad Commission of Texas, 117 S.W.2d 142 (writ dism.), the Court stated:

> "Where the Statute requires notice and hearing, such prerequisite is jurisdictional, and its omission renders the order void."

The notice and hearing as set out in the Statute are without question mandatory requirements; therefore, since the definitive paragraph was added without any notice, that part of the rule would be void. Also, since

the mailing of the certificates was prior to the time the rule was to go into effect, then certainly the Board cannot assert that the rule is retroactive. Therefore, the Board has no authority to revoke or suspend a license for an act committed prior to the time the rule became effective.

The Board has authority under the Statute to prohibit solicitation after proper notice and hearing. However, in order to interpret the applicability of the rule against "solicitation", it is necessary, in our opinion, to define the term.

"Solicit" is defined as: "To ask for with earnestness; to make petition to; to endeavor to obtain; to awake or excite to action; to appeal to; or to invite." Black's Law Dictionary, 3rd Ed., p. 1639.

Therefore, it is our opinion that the sending by mail, or personal circulation by employees or representatives of the funeral home of any certificates entitling the holder to certain designed discounts or free services is prohibited by the rule as promulgated by the State Board of Morticians. The purpose of the rule is to prohibit solicitation and not to impose restrictions upon the rights of individuals to enter into contracts. Phillips v. State, 136 Tex.Cr.Rep. 430, 125 S.W. 2d 585 (1939). Therefore, the portion of the rule which reads as follows must be construed as an invasion and infringement upon a person's constitutional right of liberty to contract:

> ". . . such persons shall not issue any gift certificate, or discount certificate, or offer, or give, any discount for the purpose of obtaining funeral business; and such persons shall not use donations, gifts, bonuses or acts of service designed, or calculated to place the recipient, or his or her family, or relatives, in a position of obligation or indebtedness to the donor, or the funeral establishment to which such persons are related, and such persons shall not transfer, or offer to transfer, any property or service as payment or as token consideration, for business secured, or influenced, or otherwise provided such funeral establishment, or in promise thereof.

> "Included in the above paragraph and prohibited are free ambulance service, free hospital beds, free wheelchairs, free oxygen and/or oxygen equipment, or charges made therefor at discount, but not to the exclusion of any other acts, services or specific items of value which otherwise are included therein, by the provisions thereof."

If the above quoted language is an attempt by the Board to regulate prices, then the Board has gone beyond its authority. However, the above quoted language is really surplusage, for the Board has ample authority to govern solicitation under the rule which reads as follows:

".  .  .

"No licensee, apprentice, or any other person, whether
employee, agent or representative, or one in any manner
associated with a funeral establishment, shall solicit
business or offer any inducement, pecuniary or otherwise,
for the purpose of securing or attempting to secure business
for such funeral establishment; . . ."

The answer to the second question must be governed by
contract law. Any party who had received an offer, termed a "service
contract" by the funeral home, prior to the effective date of the new rule,
may accept such offer and then form a valid and binding contract with the
funeral home. Certainly, the Board cannot contend that sending out such
offer was prohibited prior to the effective date of the rule. The rule in
question is one prohibiting solicitation and solicitation only. If the
service contract was solicitation it occured prior to the time the rule
became effective. This point has been discussed in answer to question one,
so, there is no need to go into it further. The honoring of the certifi-
cate has nothing whatsoever to do with solicitation, and it is only the
honoring of a valid contract. However, in the event this practice of send-
ing out certificates or service contracts is continued in the future, then
the Board does have the authority under the rule to restrict the activity
of the funeral home.

In reply to your third question, this office is of the
opinion that newspaper, radio or television advertising, wherein a dis-
count is offered, is a form of solicitation that is prohibited by the rule
promulgated by the State Board of Morticians. A general solicitation
which offers a "discount" to prospective patrons as a pecuniary induce-
ment to secure business for a funeral establishment violates Section c of
such rule.

The fourth question presented to this office has many
ramifications and it is difficult for us to answer the question since the
regulation of an insurance policy falls within the purview of the Insu-
rance Commission. However, if this Family Security Plan is only a sub-
terfuge by which the funeral home solicits customers, then the Board can
regulate such activities. In other words, if the benefits derived from
being a member of the Family Plan are limited by the funeral home to only
those policy holders that deal with them, then, since the funeral home is
deriving a benefit by virtue of a solicitation by an insurance company
owned in part or by the funeral home, then this activity falls within
the rule promulgated by the Board of Morticians governing solicitation.

## SUMMARY

The notice and hearing before promulgation of rules by the Board of Morticians is mandatory, and any act committed prior to the effective date of the rules does not come within the sanction imposed thereby. The Board does not have the authority to impose restrictions upon rights of individuals to contract, however the Board does have the right to prohibit solicitation as that term is defined in this opinion. Further, the State Board of Morticians may apply the rule promulgated by it governing solicitation to a funeral home offering discounts and benefits so long as the benefits and discounts are not an integral part of a life insurance policy sold by an insurance company.

Yours very truly,

WILL WILSON
Attorney General of Texas

By
Linward Shivers
Assistant

LS:aw

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman

Wallace P. Finfrock
Tom I. McFarling
Marietta McGregor Payne

REVIEWED FOR THE ATTORNEY GENERAL
BY:
    Morgan Nesbitt