THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* WILLIAM A. RINGE, Respondent.

Undertakers — constitutional law — unconstitutionality of statute (L. 1905, ch. 572, § 6a) requiring that persons engaged in the business of undertaking shall be licensed.

Power and authority exist in the legislature to license and regulate certain vocations, but such power and authority are dependent upon a reasonable necessity for its exercise to protect the health, morals or general welfare of the state.

A statute passed pursuant to the police power should be reasonable, and. its real purpose must be to protect the public health, morals and general welfare. A statute cannot, under the guise of the police power, but really to affect some purpose not within such power, arbitrarily interfere with a person or a property.right.

The care of dead human bodies and the disposition of them by burial or otherwise is so closely related to the health and general welfare of a community that the business of caring for and disposing of such bodies may be regulated by license and special regulations under the general police authority of the state, and the legislature can properly determine that undertakers shall be subject thereto, and may pass a statute for that purpose.

Section 6a of chapter 572 of the Laws of 1905 (now section 295 of the Public Health Law) is an unnecessary and unwarrantable interference with constitutional rights so far as it provides that "a person not already engaged in the business of undertaking shall not engage in such business unless he shall have been duly licensed as an embalmer and shall have been employed as an assistant to a licensed undertaker continuously for a period of at least three years," and requires such person to " make an application to the said board of embalmers' examiners for a license to engage in the business of undertaking." And in so far as it further provides that, " If a firm or corporation shall desire to engage in the business or practice of undertaking, each member of the firm or the manager of each place of business conducted by the corporation shall be a licensed undertaker."

*People* v. *Ringe,* 125 App. Div. 592, affirmed.

(Argued December 2, 1909; decided January 4, 1910.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered April 24, 1908, which reversed a judgment of the Court of Special Sessions of the city of New York convicting the defendant of the crime of carrying on the business of an undertaker without a license in contravention of chapter 572 of the Laws of 1905.

The facts, so far as material, are stated in the opinion.

*John F. Clarke,* District Attorney (*Peter P. Smith* of counsel), for appellant. The statute under which the defendant was prosecuted is not unconstitutional, but on the contrary it easily comes within the scope permitted by the police power. (*People* v. *Beattie,* 96 App. Div. 383; *Comm.* v.

*Alger*, 7 Cush. 53; *People ex rel. Nechamcus* v. *Warden, etc.*, 144 N. Y. 529; *People* v. *Gillson*, 109 N. Y. 389; *Matter of Jacobs*, 98 N. Y. 98; *Vil. of Carthage* v. *Frederick*, 122 N. Y. 268.)

*William H. Kinnear*, for New York State Undertakers' Association, intervening.

*Leopold Leo* and *Robert P. Orr* for respondent. The statute, with an offense against which respondent is charged, violates both the Federal and State Constitutions. (*People* v. *Beattie*, 96 App. Div. 383; *Lochner* v. *New York*, 198 U. S. 45; *Matter of Jacobs*, 98 N. Y. 98; *Bessette* v. *People*, 193 Ill. 334; *Matter of Aubry*, 78 Pac. Rep. 900; *Wyeth* v. *Thomas*, 86 N. E. Rep. 925; *Schnaier* v. *N. H. & I. Co.*, 182 N. Y. 83.)

CHASE, J.   The defendant was brought before the Court of Special Sessions, second division, city of New York, upon an information charging him with the crime of violating chapter 572, of the Laws of 1905, committed as follows: " The said William Ringe on the 2nd day of September, 1907, at the borough of Brooklyn of the city of New York, in the county of Kings, did unlawfully, willfully and knowingly engage in and carry on the business of an undertaker at the premises No. 459 7th avenue, without first having obtained a license to carry on said business as required by law." He was tried before said court and duly found guilty of the crime as charged in the information and judgment of conviction was entered against him.

An appeal was taken from said judgment to the Appellate Division, where the judgment of conviction was reversed. The order of reversal states that it is granted " for errors of law and not for errors or questions of fact or as a matter of discretion." This appeal is taken from such order of reversal. The only question presented for our consideration is the constitutionality of that part of section 6a of chapter 572 of the Laws of 1905 (now section 295 of the Public Health Law),

which required the defendant to obtain a license as therein provided before engaging in the business of undertaking.

The act of 1905, so far as material, is as follows : " From and after the passage of this act, (May 19, 1905) a person not already engaged in the business of undertaking shall not engage in such business unless he shall have been duly licensed as an embalmer and shall have been employed as an assistant to a licensed undertaker continuously for a period of at least three years. Such person shall make an application to the said board of embalmers' examiners for a license to engage in the business of undertaking. *  *  * If a firm or corporation shall desire to engage in the business or practice of undertaking, each member of the firm or the manager of each place of business conducted by the corporation shall be a licensed undertaker  *  *  *."

The care of dead human bodies, and the burial or other disposition of them, together with the conduct of the funeral and burial services, has for a great length of time constituted a well-known vocation, and a person who engages in such vocation is commonly known as an undertaker. Any person may freely engage in such vocation unless prevented by some statute constitutionally enacted.

The fourteenth amendment of the Federal Constitution provides that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States ; nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law.

The State Constitution provides that no person shall be deprived of life, liberty, or property without due process of law (article 1, section 6) nor of the rights or privileges secured by any citizen thereof unless by the law of the land or the judgment of his peers. (Article 1, section 1.)

Power and authority exist, however, in the legislature to license and regulate certain vocations notwithstanding the provisions of the Federal and State Constitutions, but such power and authority are dependent upon a reasonable neces-

sity for its exercise to protect the health, morals, or general welfare of the state.

The care of dead human bodies and the disposition of them by burial or otherwise is so closely related to the health and general welfare of a community that the business of caring for and disposing of such bodies may be regulated by license and special regulations under the general police power of the state.

The danger that may arise from the body of a person who has died from some infectious, contagious and communicable disease or otherwise is to some extent obviated by the sanitary regulations of local boards of health; but regulations relating to the transportation of dead bodies, permits for burials in the locality where the person has died and in the compilation of vital statistics are quite inadequate to protect the health and general welfare of a community, unless the person who comes into immediate contact with the dead body and upon whose care and skill the public are principally dependent in preventing the spread of infection or contagion and protecting the health, good order and general welfare of a community, is selected with special reference to his skill, knowledge and experience.

The opportunity which undertakers frequently have to aid in covering up or uncovering the evidences of crime, also constitutes a reason why they should be selected with reference to their character and integrity.

The statute requiring that embalmers must be licensed does not exhaust the power of the state in exercising its police power in connection with the disposition of dead human bodies. Embalming of dead bodies is done for reasons having special reference to their preservation. The principal reasons for licensing embalmers and regulating the practice of embalming is apparent in the statute which requires embalmers to apply certain tests, as directed, to determine whether life is extinct before injecting any fluid into a body, and to observe the sanitary precautions necessary in connection with the special work of embalming. There is no general statutory provision requiring that a dead human body shall

be embalmed, and it is a matter of common knowledge that all dead human bodies are not embalmed. It is not the state or local boards of health that usually come into personal contact with dead bodies. The work of the embalmer, in many instances, where the time for the burial or other disposition of the body is postponed or it is to be transported from one town to another, is important, but the duties of boards of health and of embalmers are not necessarily sufficient to fully protect the public interests. The work of the under·taker commences when the work of the physician ends, and continues, notwithstanding the work of the embalmer, until the final disposition of the body. It is to the undertaker that the public must principally look for the enforcement of sanitary rules and regulations.

The legislature can properly determine that undertakers bear such a relation to the public health and welfare that they should be subject to regulation and license. Such authority and power has been quite generally recognized, and statutes prohibiting persons from engaging in the business of under·taking except as provided thereby have been enacted and are now in force in a majority of the states of the Union. As early as 1866 the Supreme· Judicial Court of Massachusetts in *Commonwealth* v. *Goodrich* (13 Allen, 546), in considering the question of "interments" and the licensing of under·takers, said : " That this necessary duty shall be performed, especially when undertaken for hire, by suitable and trust·worthy persons, and that the moving of dead bodies through the public streets of a city shall be conducted with decency and safety, are obviously matters proper for municipal regu·lation, and which, as well as the mode of burial, may concern the public health to no slight extent."

It further said : " Nor does there seem to us to be anything unreasonable in the regulation which prohibits any person, unless appointed as an undertaker, or otherwise authorized by the board of health, from moving from any house or other place in the city to any place of burial, the body of any deceased person."

A recent case in that state has reaffirmed the authority to prohibit persons from engaging in the business of undertaking unless they are licensed in conformity with the statutes of the state. ( *Wyeth* v. *Bd. of Health*, 200 Mass. 474; 86 N. E. Rep. 925.)

A statute passed pursuant to the police power should be reasonable. Its real purpose must be to protect the public health, morals or general welfare. A statute cannot, under the guise of the police power, but really to affect some purpose not within such power, arbitrarily interfere with a person or a property right. The statute under consideration unnecessarily interferes in several particulars with that liberty of person and property guaranteed by the Constitution.

The work of an embalmer and that of an undertaker can, in most instances in the interests of economy and that orderly procedure desirable in the performance of such work, be done by the same person, but the public health does not require that an embalmer be an undertaker, or that an undertaker be an embalmer. The business of undertaking has been carried on for generations, particularly in the rural districts, by persons not holding embalmers' licenses and who have no special knowledge of the work of embalmers. There is nothing that occurs to us, or that has been called to our attention, to indicate any danger to public health in permitting a person otherwise qualified to carry on the business of undertaking solely because he is not a licensed embalmer. In the case of *Wyeth* v. *Bd. of Health* (*supra*) a mandamus was obtained by the petitioner against the defendants who constituted the board of health of the city of Cambridge to compel them to grant him a license as an undertaker. A license had been denied the petitioner because the regulations in regard to licensing undertakers prescribe that a license shall not be granted to a person not a licensed embalmer and the petitioner was not a licensed embalmer. It was held that the refusal to grant the petitioner a license as an undertaker solely for the reason that he was not licensed as an embalmer was unwarranted, improper and illegal. In the opinion the court say : " No argument

has been addressed to us to show that the general embalming of dead bodies is necessary for the preservation of the public health, and we know of no facts that indicate such a necessity. Except in those cases where embalming is desired for a special reason, we know of nothing connected with the duties of an undertaker that calls for the work of a licensed embalmer. When such work is desired, a proper person can be procured to perform it. In cases generally it is not an essential part of the duties of an undertaker, and it has no relation to the public health."

The court also say: " We consider this action without foundation in law or reason and in violation of the constitutional rights of our citizens."

The act under consideration also provides that no person shall be licensed as an undertaker unless he has been employed as an assistant to a licensed undertaker continuously for a period of at least three years. We will assume that the statute should be construed to mean that if a person serve continuously for three years as an assistant to a licensed undertaker either before or after the undertaker obtained his license that such service would be sufficient compliance with the statute.

Where a statute admits of two constructions, one of which will make the act in violation of the Constitution and by the other of which the act can be sustained as a proper exercise of legislative power, that construction should be given which assumes that the legislature was mindful of its constitutional limitations, and passed a constitutional, and not an unconstitutional act. (*People ex rel. Nechamcus* v. *Warden, etc.*, 144 N. Y. 529; *People* v. *Lochner*, 177 N. Y. 145.)

The trouble with this statute, however, is not wholly obviated by holding that it does not require three years' continuous service by an assistant after the license to the undertaker was actually granted. The provisions of the statute requiring that the service must be *continuous* and arbitrarily prohibiting the issuing of a license to a person to engage in the business of undertaking unless such person has been an assistant to a licensed undertaker for the time therein speci-

fied unnecessarily interferes with the common-law right to engage in a lawful business. It makes a particular form of acquiring skill and knowledge essential and forfeits the right to count the time so engaged in that particular education at each time when there is a break in the continuity of the service.

This court, in *Schnaier* v. *Navarre Hotel & Importation Co.* (182 N. Y. 83) in construing that part of chapter 803 of the Laws of 1896 providing that it shall not be lawful for a copartnership in the city of New York to engage in the business of employing or master plumber unless each and every member thereof shall have been registered after examination and certification by an examining board of plumbers, held, that so far as it prohibits the right to form a partnership for the purpose of carrying on the lawful business of employing or master plumber unless each partner is so registered it is unconstitutional.

The provisions of the act under consideration, so far as they prohibit a firm from engaging in the business or practice of undertaking unless each member of the firm is a licensed undertaker, are clearly unconstitutional within the reasoning of the *Schnaier* case.

We cannot refrain from the thought that the act in question was conceived and promulgated in the interests of those then engaged in the undertaking business and that the relation which the business bears to the general health, morals and welfare of the state had much less influence upon its originators than the prospective monopoly that could be exercised with the aid of its provisions.

We sustain the authority of the legislature to pass a statute to license and·regulate the business of undertakers to protect the health, morals and general welfare of the state, but hold that the statute in question, so far as considered by us, is an unnecessary and unwarrantable interference with constitutional rights.

The order should be affirmed.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, WILLARD BARTLETT and HISCOCK, JJ., concur.

Order affirmed.