STATE BOARD OF FUNERAL DIRECTORS AND EMBALMERS FOR FLORIDA, *et al.*, v. RALPH G. COOKSEY.

3 So. (2nd) 502

En Banc

Opinion Filed May 30, 1941

On Petition for Rehearing (*See Page 788*)

*Hull, Landis & Whitehair, Francis P. Whitehair* and *John L. Graham,* for Appellants;

*Wm. C. Kaleel* and *B. M. Skelton,* for Appellee.

BUFORD, J.—On appeal we review order of circuit court reversing order of State Board of Funeral Directors and Embalmers for Florida revoking the license of Ralph G. Cooksey as a "funeral director" under the provisions of Chapter 17950, Acts of 1937.

The charges upon which the action of the Board is based are:

"That the said Ralph G. Cooksey violated Section 10, paragraph numbered 2, sub-paragraph (g) of Chapter 17950, Laws of Florida, Acts of 1937, in that the said Ralph G. Cooksey shipped and delivered a certain casket containing the body of one Marion Bailey, deceased, to affiant with intent to deceive Nathan A. Tucker, the purchaser thereof, which said casket did not conform to the sample submitted and the representations made prior to securing the order therefor from the said Nathan A. Tucker by the said Ralph G. Cooksey, and

"That the said Ralph G. Cooksey violated Section 10, paragraph numbered 2, sub-paragraph (f) of Chapter 17950, Laws of Florida, Acts of 1937, in that he falsely imputed to one Maynard A. Duryea, Manager of Endicott Funeral Company of St. Petersburg, Florida, and a duly licensed funeral director of the State of Florida, inability to perform a certain contract made with affiant to ship the body of one Marion Bailey, deceased, from St. Petersburg, Florida, to Lizton, Indiana, and

"That the said Ralph G. Cooksey violated Section 10, paragraph numbered 2, sub-paragraph (k) of Chapter 17950, Laws of Florida, Acts of 1937, in that he willfully interfered with Maynard A. Duryea, a licensed funeral director of the State of Florida, having lawful custody of the dead human body of one Marion Bailey, deceased, in the performance of the duty of the said Maynard A. Duryea as a licensed funeral director."

Paragraph 2 of Section 10 of the Act provides, *inter alia*:

"Whenever it shall appear to the Board that any licensed funeral director practicing in the State of Florida has been guilty of any of the following acts, his or her license shall be revoked by the Board: . . ."

Sub-paragraphs (f), (g) and (k) of paragraph 2 of Section 10 of the Act, *supra,* are as follows:

"(f) That the licensee has caused the defamation of a duly licensed funeral director in this State by falsely imputing to him dishonorable conduct, inability to perform contracts, or the handling of inferior merchandise."

"(g) That the licensee has shipped or delivered merchandise or supplies, with the intent to deceive the purchaser, which did not conform to the samples submitted or representations made prior to securing the order therefor."

"(k) That the licensee has willfully interfered with a licensed funeral director having lawful custody of a dead human body in the performance of his duty as such funeral director."

As we construe sub-paragraph (k), *supra,* it covers any interference by one funeral director with the lawful possession of any other funeral director of a dead

human body whether the latter funeral director shall have taken physical possession of the body or is merely entitled to the lawful possession of such body.

There is no question about the construction of sub-paragraphs (f) and (g).

There is no question about the compliance with the statute by the Board in connection with the procedure, hearing and determination of the controversy.

Appellee contends that the order of the circuit court should be affirmed, if for no other reason because he avers that Chapter 17950 is unconstitutional and void, in that it contravenes either or both Section 1, Article XIV of the Amendments to the Federal Constitution and Section 12 of the Declaration of Rights of the Florida Constitution. This question was not passed on by the lower court, though the appellee assigned this as a ground for review.

Appellee has cited a number of cases which appear to support his contention but we are not inclined to follow the reasoning of these cases.

In the case of Hunter v. Green, 142 Fla. 104, 194 Sou. 379, we recognized the power of a municipal legislative body to regulate the business of an undertaker, not under the provisions of a zoning ordinannce but under the inherent police power delegated to the municipality by the Legislature. The particular provision of the Florida Act, *supra,* which the appellee contends makes the Act void, is that contained in subparagraphs (e) and (f) of paragraph 2 of Section 8 (1) of the Act. Paragraph 2 of Section 8 (1) *inter alia,* provides:

"(2) That no person shall be qualified to be examined by the State Board of Funeral Directors and Em-

balmers for license as a funeral director unless he shall have the following qualifications: . . ."

"(e) He shall have been a practicing licensed embalmer in the State of Florida for at least one year.

"(f) He shall have been associated with some funeral director duly licensed under the terms of this Act, in the business of funeral directing for at least twelve months and shall have been vouched for and recommended by at least two funeral directors, duly licensed under the terms of this Act, who are familiar with his reputation and character."

The last paragraph of Section 8 of the Act provides:

"Any person who at the time of the passage of this Act is a duly licensed funeral director or embalmer under the laws of the State of Florida shall be considered as duly licensed under the terms of this Act, and such license shall continue in full force and effect until the 31st day of December, A. D. 1937, and shall be subject to renewal as are other licenses issued under the terms of this Act."

The vocation of a funeral director is one which is affected with public interest and concern to a paramount degree. The preservation of the bodies of the dead and the ceremonies connected with the disposition of such bodies has been a matter of great human interest since the dawn of man's civilization. That interest has obtained, and continues to obtain, amongst the savage tribes of the world as well as amongst the civilized people. The courts of the land have recognized the propriety of legislation regulating the exercising of the vocation of embalmers and funeral directors.

In the case of Prata Undertaking Co. v. State Board

of Embalming & Funeral Directing, 55 R. I. 454, 182 Atl. 808, it is held:

"Legislature had authority to enact laws regulating operation of undertaking business for purpose of safeguarding public in relation to its health, safety, morals, comfort and general welfare, in view of public or quasi public nature of such business."

"So long as a statute enacted by Legislature pursuant to its police power bears substantial relation to welfare of public, protects and conserves constitutional guaranties, and appears to be reasonable exercise of power, it will be held valid, and within such limits exercise of legislative discretion is not subject to judicial review."

"Provisions of statute regulating operation of undertaking business authorizing state board of embalming and funeral directing to revoke or suspend any funeral directing license for any cause deemed sufficient in judgment of board *held* not unconstitutional as abridging privileges or immunities of citizens or depriving them of due process."

And, in the body of that opinion the court said:

"The exercise by the Legislature of the right to so regulate and control is now fully recognized and justified under the police power, especially when the professions and occupations are of a public or quasi public nature. Coppage v. Kansas, 236 U. S. 1, 35 S. Ct. 240, 59 L. Ed. 441, L. R. A. 1915C, 960, and cases cited. The undertaking business is an enterprise of this type, and the safeguarding of the public in relation to its health, safety, morals, comfort and general welfare is the primary object sought by and is the basis for such legislation. People v. Ringe, 197 N. Y. 143, 90 N. E. 451, 27 L. R. A. (N. S.) 528, 18 Ann. Cas. 474;

Keller v. State, 122 Md. 677, 90 A. 603; Miller v. Johnson, 110 Kan. 135, 202 P. 619; State v. Norvell, 137 Tenn. 82, 191 S. W. 536, L. R. A. 1917D 586. It is of importance to all that such a business be conducted properly and only by those who are qualified to carry out its responsibilities. Questions relating to the care of dead human bodies, their embalming and transportation, the location of the business and its equipment, sanitation, danger of infection or contagion from disease, the obtaining of required certificates and permits before acting, the orderly conduct of funerals and burials and the like, are all of public concern."

See also Drummey v. State Board of Funeral Directors & Embalmers of California, _____ (Cal. App.) _____, 77 Pac. (2) 912 and cases there cited; People v. Ringe, 197 N. Y. 143, 90 N. E. 451.

In the latter case it was held that the Legislature had the power to regulate the vocation involved but that the provision which required one who sought to engage in the business of an undertaker to have been duly licensed as an embalmer and to have been employed as an assistant to a licensed undertaker continuously for three years was violative of the constitutional guaranty that no State should make any law abridging the privileges or immunities of citizens of the United States, nor should any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction equal protection of the law.

We do not follow this enunciation by that court. See also Annotation in cases cited 104 A. L. R. 402, *et seq.*

Where any vocation is affected with public interest to such extent as to warrant the intervention of legis-

lative action to regulate the same to protect that public interest it is within the province and power of the Legislature to prescribe the qualifications of those who may be permitted to engage in such vocation to the extent that such prescribed qualifications constitute reasonable requirements when applied to the vocation being regulated.

When we consider the service which a funeral director is required to render to the public and the duty which he owes to the public to see that that service is properly, efficiently, honestly and promptly rendered, we can find nothing unreasonable or unwarranted in the statutory requirement that each funeral director shall be a licensed embalmer.

The challenged provisions of the Act do not offend against the provisions of the organic law as suggested by appellee. So having reached the conclusion that the Board proceeded under a valid statute in the manner provided for in the statute to determine a matter within the jurisdiction of the Board to determine, we now come to the consideration of the result reached and the challenged action of the circuit court.

The record amply sustains the charges and the findings of the State Board. It is true that there were conflicts in the evidence but the preponderance of the evidence supports the conclusions reached by the Board in the exercise of its jurisdiction.

We have carefully considered the record in connection with the findings and order of the chancellor. The chancellor says, amongst other things:

"There is found within the record little or no evidence which attempts to sustain charges Number Two and Three. The record is wholly insufficient to sustain these two charges. There is, however, some evidence

tending to prove the first charge. Such evidence is sufficient to raise a suspicion that the appellant, Cooksey, may have switched caskets and not have shipped the body in the casket exhibited to and sold to the life-long friend and business associate of the deceased. The evidence discloses an opportunity for such switching in that there was a lapse of about one hour between the time the casket purchased was seen, with the body in it, by witnesses and the departure of the train upon which it was shipped. There is some testimony to the effect that the casket in which the body reached its northern destination was not the casket selected by the deceased's friend and business associate. One witness testified both for appellant, Cooksey, and for the Board. The testimony of this lady was at best vacillating, contradictory and therefore wholly insufficient.

"There is much evidence tending to show conduct on the part of the appellant which, if true, was certainly unbecoming and improper. However, this testimony was admitted over objections of counsel for the appellant, which objections were well taken and should have been sustained. There were no charges under which such evidence would have been proper. Under the provisions of the Act creating the Board, said Board was only authorized to consider and to act upon charges contained in the accusation of which the accused had been served with notice and was without authority to either consider this evidence hereinabove mentioned or revoke a license upon any grounds other than upon the charges presented in the written accusation. It is entirely possible that this evidence, being prejudicial in character as it unquestionably was, may have had some influence upon the minds of the members of the Board, as it would definitely have upon this Court, if

the Court were not conscious of the rule, relative to the admission of evidence, which makes it wholly incompetent and therefore improper to be considered."

We cannot agree with the conclusions there stated. We think that there is substantial evidence in the record which supports charges numbered two and three. We find that the evidence is well nigh conclusive that the funeral director was guilty of the charges contained in the first paragraph thereof. The statement, "There is much evidence tending to show conduct on the part of the appellant which, if true, was certainly unbecoming and improper. However, this testimony was admitted over objections of counsel for the appellant, which objections were well taken and should have been sustained. There were no charges under which such evidence would have been proper."—presumably has reference to evidence as to a suit of clothes that witnesses testified had been purchased to be used on the deceased in preparing his body for burial and which suit of clothes, there is evidence to show, was placed upon deceased and was on his body when his friends viewed it in the funeral home, but was not on the body when it reached its destination in Indiana; and also testimony which showed that the funeral director had at first agreed to furnish necessary service and casket and ship the body to Indiana for a total fee of $200.00 but when a banker friend of the deceased appeared on the scene to make arrangements for the funeral he hiked the price from $200.00 to $925.00 and furnished a casket which cost him $105.00 instead of the casket which the friend had selected and also instead of a cheaper casket which he might have furnished under the $200.00 service. This

was all evidence applying to the *res gestae* and was all admissible.

In American Jurisprudence, Vol. 20, p. 558, the text says:

"It is well settled that the term *res gestae* includes all those acts and circumstances which are incidents of a particular litigated act and which are illustrative of such Act."

In the case of Powell v. State, 131 Fla. 254, 175 Sou. 213, we said:

"The attorney for plaintiff in error contended at the bar of the court that error was committed in allowing testimony to be introduced at the trial of Powell when he was charged with the death of Katie L. Powell as to facts and circumstances surrounding the death of Mrs. Speer, who was the mother of Mrs. Powell, who lived in the house with the Powells and who the record shows was murdered at the same time Mrs. Powell was murdered. The record shows that both homicides were committed at the same time, though not by the same physical act; that both bodies were disposed of in the same manner and in the same place. The evidence in regard to and of the circumstances surrounding the death of Mrs. Spear constituted a part of the *res gestae* of the death and circumstances surrounding the homicide of Mrs. Powell and was, therefore, clearly admissible."

So, in this case the evidence as to the entire transaction which culminated in the preparation and shipment of the body from St. Petersburg, Florida, to Indiana was admissible in evidence and was proper to have been considered by the Board in arriving at the conclusion as to whether or not, under all the facts shown to have existed and transpired, the funeral

director was guilty of having done that specific thing which was charged in the first count or paragraph of charges. This testimony strongly tended to show the disposition to disregard the high standards of integrity which should ever control those engaged in his vocation and threw light upon the question and determination as to the weight and probative force to be given his testimony.

"There are statements in the order of the chancellor which indicate that he may have been influenced somewhat by the view that under the facts the order of the Board should have been a suspension rather than a revocation of the license (and this may be justified, but under the law that is a matter exclusively in the discretion of the Board)." If the Board should be convinced that the revocation of the license was too severe a penalty, or that other cause exists why it should do so, it has the power to reinstate the funeral director.

We are brought to the conclusion that the order of the chancellor was clearly erroneous and should be reversed with directions that the order of the State Board of Funeral Directors & Embalmers for Florida be affirmed.

It is so ordered.

BROWN, C. J., WHITFIELD, TERRELL, CHAPMAN, THOMAS, and ADAMS, J. J., concur.