HOWELL, CHARLES COOK, Jr., Associate Judge.
Where a prima facie case for a temporary injunction is established by the State Board of Funeral Directors and Embalmers of Florida against an individual for unlawfully practicing the profession of funeral directing and embalming without a license, is the injunction to be denied because of an asserted adequate remedy at law afforded the Board through those provisions of the governing laws permitting criminal prosecutions for the violation thereof ?
The chancellor below in effect replied in the affirmative.
With extreme regret, we are impelled to disagree.
*575 In the case sub judice the State Board of Funeral Directors and Embalmers of Florida (hereafter, “the Board”) brought a suit for an injunction in the Circuit Court of the Third Judicial Circuit, in and for Taylor County, Florida, against one George Evans (later, “Evans”).
Essentially the complaint, supported by sworn statements, alleged that “George Evans has not been licensed by the Board pursuant to Chapter 470, Florida Statutes, to act in the capacity of a funeral director or embalmer”; but that “in violation of the statute . ’ . . Evans is conducting a funeral and embalming service at 707 Conley Avenue, Perry, Florida.” Contending that “the remedies provided by Section 470.33, Florida Statutes, F.S.A.,[1] constitute an inadequate remedy,” and that unless the trial court would “grant its temporary injunction . . . and . . . upon final hearing will grant its permanent injunction against the Defendant . . . the Board and all members of the profession lawfully and ethically engaged in the practice of funeral directing and the peace, health, safety, welfare and morals of the members of the general public will be damaged”, the Board prayed for a restraining order.
Evans denying the essential allegations of the complaint, testimony was taken; at the conclusion of which the chancellor entered the order herein attacked; explaining that “the Court is of the persuasion that an adequate remedy at law is available to the plaintiff in this case.”
The instant appeal was the result.
The comparative table below demonstrating at least a prima facie violation by Evans of the law, our task will then be simply that of determining if, under the authorities, injunction will be frustrated by the availability of criminal sanctions,[2] and, if not, if injunction is otherwise appropriate under the circumstances:
The Statute
1. “It is unlawful for any person to engage in the profession of funeral directing or embalming or practice the same or profess to practice the same or to hold himself out to the public as a funeral director or embalmer without having a license as provided in this chapter, or a renewal thereof for the year in which such acts are performed, which said license or renewal thereof has not been revoked and is not suspended at the time of the performance of said acts.” Fla.Stat. § 470.21, F.S.A.
2. “ . The term ‘funeral directing,’ as used in this chapter, shall be construed to mean the profession of *576 directing or supervising funerals for profit, or the profession of preparing dead human bodies for burial or cremation by means other than embalming, or the disposition or shipping of dead human bodies, or the provision or maintenance of a place for the preparation of dead human bodies.
“The term ‘funeral director,’ as used in this chapter shall be construed to mean a person required to be licensed to practice the profession of funeral directing under the laws of this state, who meets the public, displays and sells or offers to sell funeral supplies, whether such sale or offer to sell involves a pre-need burial contract as defined and regulated by the laws of this state or for present use and delivery, who plans details of funeral services with members of the family and minister or any other person responsible for such planning or who directs, is in charge, or apparent charge of, and supervises such services in a funeral home, chapel, church, cemetery, or other place; who enters into the making, negotiation, or completion of financial arrangements for funerals whether for present or future need, including, but not limited to, the sale and selection of funeral supplies . . .” Fla.Stat. §§ 470.01(3), (4), F.S.A.[3]
*575 The Board’s Proof
1. The bodies of a Mrs. Wesley and a Mrs. Kellum were laid in state upon directions from Evans and Evans supervised the cemetery details for the funeral of Mrs. Wesley; this, although he had “not qualified for and ha(d) not been issued a license as Funeral Director or Embalmer under provisions of Chapter 470, Laws of Florida”, according to the first exhibit attached to the complaint.
2. Evans it was who supervised the cemetery details for the funeral of Mrs. Wesley, and who shared in the profit of that funeral in addition to a separate payment for ambulance services.
*576 The sworn statements of Mr. and Mrs. Earlie Whitehurst, similarly exhibited to the complaint, declared that after the death of aged Mr. George Mickens, Evans went to the Mickens’ residence, picked up the body, and told the White-hursts that he would handle the funeral arrangements and would collect payment from the Welfare Department and from Social Security.
Mrs. Lattie Williams related that following the death of her uncle’s wife, Evans, with another individual, came to her home to discuss the details of the funeral; and determined the type of casket to be purchased, the price of a shroud, and the manner by which the money should be paid — the arrangements to be handled by the Evans Funeral Home with the balance of the money owed being paid to Evans.
Exhibit C to the complaint, the affidavit of Mr. Anthony B. Beattie, disclosed that on July 11, 1969, Evans opened the door for him at 707 Conley Avenue, in Perry, Florida; telling him that he, Evans, was allowing relatives, friends and others to view the body of one Richard Montgomery, deceased (pointing out to him Montgomery’s body lying in a casket — and saying that the funeral was to be “tomorrow”. Montgomery’s body had been released to Evans Funeral Home. Evans, on numerous occasions, had represented himself to the administrator of the Doctors Memorial Hospital in Perry “as a legitimate funeral director” and “for years” the hospital administrator “had authorized the nurse in charge of the hospital to release dead bodies to the Evans Funeral Home.”
*577 Now the law is that:
I. The Criminal Statutes Are Not Themselves an Adequate Remedy at Lavo
The language on re-hearing in Syfo Water Co., Inc. v. Chakoff, et al., Fla.App. 3rd Dist., 1966, 182 So.2d 17, 18-19, is not insignificant because, after observing “that the violation of Section 540.01, Florida Statutes, F.S.A., is criminal in nature in that the penalty for the violation of that Section is a fine of not more than five thousand dollars or imprisonment in the county jail, not to exceed one year”, and after acknowledging the general rule that “injunctive relief will not lie to restrain a criminal act unaccompanied by some recognized ground of equitable relief”, the opinion reads that “This court also recognizes that where intervention of equity is warranted to protect civil rights . . . and where criminal prosecution is inadequate to effect this purpose, a crime or statutory offense may be enjoined.”
This jibes comfortably with Pompano Horse Club, Inc., et al. v. State ex rel. Bryan, 1927, 93 Fla. 415, 111 So. 801, 809, affirming, to abate a public gambling nuisance, the granting of a temporary injunction against the Pompano Horse Club, and explaining that “ ‘the government has the right to abate (such a condition) by a suit in equity, notwithstanding it at the same time had the further right to resort to criminal prosecution. It may resort to either method, or both, at its discretion.’ ”
Our state, therefore, has fallen in step with the broadly accepted doctrine that “where an injunction is necessary for the protection of public rights ... or welfare, the criminality of the acts complained of does not bar the remedy by injunction, and the court will consider the criminality of the act only to determine whether, under the particular circumstances, equitable intervention is necessary.” 43 C.J.S. Injunctions §152, pp. 764-765. For further example, in Davis v. Florida East Coast Railroad, Fla.App. 2nd Dist., 1964, 166 So.2d 774, 775, in which case “the defendant asserts that he cannot be legally enjoined from performing acts, those of which are criminal in nature because the injunctive process does not afford the protections guaranteed by criminal proceedings”, our sister Court, in approving the injunction issued against Davis from interfering with the orderly operation of the plaintiff railroad during a strike dispute, remarked that “we find no merit in such contention. The facts disclose a pattern of harassment detrimental to public safety.”
There is no right more acutely inhering in the public safety or welfare than the right to sympathetic and expert attention to the body of one dear to us when he “goeth to his long home, and the mourners go about the streets.” 12 Ecclesiastes, 5.
It has been thus throughout the ages.
When the body of the Trojan hero, Hector, had at last been reclaimed by his beloved Troy, we are told that King
“Priam checked the torrent (of grief) as it rose:
“‘Perform, ye Trojans! what the rites require,
“ ‘And fell the forests for a funeral pyre;
“ ‘Twelve days, nor foes nor secret ambush dread;
“ ‘Achilles grants these honors to the dead.’ .
“ ‘And sadly shared the last sepulchral feast.
“Such honor Ilion to her hero paid,
“And peaceful slept the mighty Hector’s shade.” The Iliad, XXIV.
Later that fatalistic melancholy genius of poesy, Omar Khayyam, wrote in Quatrain LXVII of his famed Rubaiyat,
“Ah, with the Grape my fading Life provide,
*578 “And wash my Body whence the Life has died,
“And in a Windingsheet of Vine-leaf wrapt,
“So bury me by some sweet Garden-side.”
This philosophy was caught up by the Supreme Court of Florida in State Board of Funeral Directors and Embalmers for Florida, et al. v. Cooksey, 1941, 147 Fla. 788, 3 So.2d 502, 505. In itself reversing a Circuit Court order which had reversed an order of this same Board revoking the license of Ralph G. Cooksey as a “funeral director”, the Court felt that “The vocation of a funeral director is one which is affected with public interest and concern to a paramount degree. The preservation of the bodies of the dead and the ceremonies connected with the disposition of such bodies has been a matter of great human interest since the dawn of man’s civilization. That interest has obtained, and continues to obtain, amongst the savage tribes of the world as well as amongst the civilized people. The courts of the land have recognized the propriety of legislation regulating the exercising of the vocation of embalmers and funeral directors. . . . The undertaking business is an enterprise of this type,[4] and the safeguarding of the public in relation to its health, safety, morals, comfort, and general welfare is the primary object sought by and is the basis for such legislation.”
Thus we discover no “adequacy” in merely being able to fine “any person violating any provision of” Chapter 470, Florida Statutes, F.S.A. “. . . in an amount not exceeding five hundred dollars”, or by imprisoning such individual “in the county jail for a period not exceeding six months, or by both such fine and imprisonment, as in the discretion of the court.” Fla.Stat. § 470.28, F.S.A.
The above criminal sanctions are not even as severe as those in Syfo Water Co., Inc., supra. Several daily arrests; several impositions of a fine; several sentences to prison from a period of one day to six months, are less protection to the public and more expensive, repetitive, and cumbersome than one clear-cut suit eventuating, when the facts so justify, in a continuing, permanent injunction. None of these criminal provisions would guarantee to the public that the individual charged with the crime would not still, or after expiation of his sentence, “hold himself out to the public as a funeral director or embalmer without having a license as provided in this chapter.” Fla.Stat. § 470.21, F.S.A. Conceivably, too, he might, though himself securely confined by prison walls, engage through a staff in the activities proscribed by the Statute; when “it is hereby declared to be the legislative intent that every funeral establishment in this state shall be operated under the full charge, control and supervision of an individually designated licensed funeral director and licensed embalmer. The name of the licensed person to be in charge of each funeral establishment shall be stated on the application for all licenses or renewal of such license.” Fla.Stat. § 470.30(4), F.S.A. In an area of such grave, tender, and important interest as that presently under consideration, an area which has encompassed or eventually will touch each one of us personally (as distinguished from the impact of crime upon the public generally), it is hardly appropriate that the only remedy afforded our protector Board would be the severe one of the criminal law, requiring proof beyond and to the exclusion of every reasonable doubt.[5]
*579 II. Injunction is Otherwise Appropriate
This is because the legislature has “by clear implication” granted authority for the writ when the circumstances demand it.
In this aspect we at once think of Florida Industrial Commission v. Hurlbert, a decision of this very Court (1959, 114 So.2d 209, 211), where the lower court had denied injunction relief to the Florida Industrial Commission in its effort to restrain the defendant from operating a private employment agency without having received the required license. The right to the injunction was recognized on appeal; the thought of this Court being, in passing, that “the general rule is that equity has no jurisdiction to enjoin the commission of a crime, but the exception is that equity may grant an injunction when the legislature has specifically, or by clear implication, authorized the injunctive process as a means of restraining violation of a statute.” (Emphasis ours.)
Clear implication is perforce present in the statutes with which we are currently dealing.
Already noticed has been Fla.Stat. § 470.29, F.S.A., expressly providing for an injunction as an alternative or additional method of procedure “for the revocation or suspension of licenses.” Would it not be passing strange that whereas the Board is empowered to enjoin a person who had at least at one time in the past met the rigid qualifications prescribed by law (Fla. Stat. § 470.08, F.S.A.) for the acquirement of a funeral director and embalmer’s license, it is completely helpless to enjoin one who has never proven even initial qualifications to practice the vocation, from engaging in the public interest work of a funeral director or embalmer?
Not so; if there is any analogy provided by State Department of Public Welfare, et al. v. Bland, Fla.1953, 66 So.2d 59, 61; upholding the State Welfare Board’s right to enjoin from operating a nursery home for children, one who had undertaken so to do without first having procured a license from the Board. Grappling squarely with and overruling the contention that the there pertinent statute was silent about an injunction suit in instances where a license had never been issued, the Court stated that “the question presented here boils down to the proposition that while the statute involved (Chapter 26065, Special Acts of 1949) authorizes a court of equity to entertain a suit of the kind here involved where the license has been issued and then revoked, there is no provision for such action where the license has never been issued at all”; and explained that “this argument simply ignores two of the most fundamental rules of statutory construction, viz.: that the courts should construe a statute so that the plain intent of the Legislature would be given effect and that the courts should not construe a statute in such manner as to reach an absurd conclusion if any other construction is possible. To give effect to the argument of appellee would be tantamount to saying that a person plainly covered by and included within the statute could be the simple expedient of ignoring the statute, defeat the legislative will. Such result would both be absurd and do great violence to the plain legislative intent, which was obviously to provide competent supervision under a qualified agency of these homes which have charge of our most precious possessions — our young people. Moreover, Section 2 of Chapter 26065, supra, makes it unlawful to operate such institution without having ‘first procured a license from the State Welfare Board’. Since appellee was operating the home in violation of the law, never having secured a license, no authority need be expressed in the statute itself to authorize or empower the Circuit Court to enjoin[6] a violation of the Act.”
*580 In sum: While we imply no opinion on the ultimate merits, intend no indicative vane respecting the propriety of a permanent injunction here, “it is manifest from the allegations of (the) complaint (and) supporting affidavits” and testimony adduced below, “that the injury (feared by the Board) will be done if an immediate remedy is not afforded”, Rule 1.610(b), R.C.P., 31 F.S.A. Accordingly the challenged order of the Circuit Court is reluctantly “reversed and set aside,” and the case respectfully remanded to that tribunal “with directions to” enter the temporary restraining order against Evans, and to then “proceed further in accordance herewith.” Bland, 66 So.2d p. 61.
Reversed.
CARROLL, DONALD K., Acting C. J., and WIGGINTON, J., concur.

. “Any person, firm or corporation who lias control of a funeral home, mortuary, chapel or funeral establishment, as defined in this law, and fails to register same according to the provisions of this act, upon conviction, may be fined not less than $100 nor more than $500 for each violation and each day that said funeral home, mortuary, chapel or funeral establishment is operated shall be deemed to be a separate and distinct violation of this law.”

. There is also Fla.Stat. § 470.28, F.S.A.: “Any person violating any provision of this chapter shall be guilty of a misdemeanor and upon conviction thereof, shall be punished by a fine in an amount not exceeding five hundred dollars, or by imprisonment in the county jail for a period not exceeding six months, or by both such fine and imprisonment, as in the discretion of the court. The board, by all lawful means, shall aid the prosecution of violations of this chapter.”

. The Supreme Court has enumerated the functions which may not be performed by unlicensed personnel. State Board of Funeral Directors and Embalmers for State of Florida v. National Chapels, Inc., Fla., 1971, 249 So.2d 677.

. A type of police power; “especially when the professions and occupations are of a public or quasi public nature.” “ . the injunction is to prevent, by indirection, as well as directly engaging in the business of funeral directing.” State Board of Funeral Directors and Embalmers, et al. v. Cooksey, 1945, 155 Fla. 761, 21 So.2d 542, 544.

. Or could 'it possibly be that, otherwise sufficient as a foundation for the in-junctive process, Chapter 470 becomes impotent to yield it, simply because of the *579 addition thereto of the provisions relating to criminal prosecutions? Hardly.

. There is no marked tendency in Florida to unduly hamper permissible resort to *580 the powerful writ of injunction. To illustrate : It is well recognized that the unauthorized practice of law may be stopped and prohibited in futuro by injunction. State ex rel. Florida Bar v. Sperry, Fla., 1962, 140 So.2d 587, 588, 589; and Florida Bar v. Fuentes, Fla., 1966, 190 So.2d 748, 752. Injunctions similarly lie to enforce agreements by an employee who, under Section 542.12(2), F.S.A., has agreed with his employer “to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area. . . .” Capelouto v. Orkin Exterminating Company of Florida, Fla., 1966, 183 So.2d 532.